## THE C. G. CRANMER.[1]

### FELLS et al. v. THE C. G. CRANMER.

(District Court, E. D. Pennsylvania. February 29, 1888.)

SALVAGE—WHO ARE SALVORS.

The schooner C., while on a voyage from Norfolk to Philadelphia with a cargo of cedar logs, part of which were above and part below deck, encountered heavy weather, during which part of the deck-load was lost. This caused the vessel to list, and in consequence ship considerable water. This was pumped out, enough of the deck-load was thrown off to right the vessel, and the colors were run up for a tug. The libelants were shipwrecked sailors, who had been drifting about for 30 hours, without food or water. They were taken on board and fed, and were then asked to assist in working the vessel, as the crew had been worked very hard. This they agreed to do. Soon after they were taken aboard a passing brig tendered assistance, which was declined. On arriving in port they claimed salvage. Held, that they were not entitled to salvage, but that under the circumstances they ought to receive more than ordinary compensation for the services rendered.

In Admiralty.

The schooner C. G. Cranmer, being well and sufficiently manned and equipped, while on a voyage from Norfolk to Philadelphia with a cargo of cedar logs, partly below and partly on deck, on the 17th day of December, A. D. 1887, met with tempestuous weather, the wind rising almost to a hurricane, during which she lost part of her deck-load, being part of the gunwale tier on the starboard side. About half past 6 the same evening, the wind shifted to the north-west, and the vessel went on to the starboard tack, and the vessel (being lighter on the starboard side, by reason of the loss of a portion of the deck-load as aforesaid) took a

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

strong list to port, being almost on her beam ends. The anchors were let go, and about 8 o'clock she parted her starboard chain, and dragged seaward with her small anchor. The vessel, while in this position, took in considerable water, and the men worked all night to pump her out. About 7 o'clock next morning (December 18th) all hands went to work to throw off deck-load to right the ship, and the colors were set for a tug. After the vessel had been righted, and most of the water pumped out of her, (she did not leak,) to-wit, at about 9 o'clock A. M., the libelants were discovered coming towards the Cranmer in an open boat, and in about half an hour afterwards libelants were taken aboard. The libelants were shipwrecked sailors, having been connected with the Philadelphia schooner Catharine W. May, which had been lost, and from which they had escaped in open boat, about midnight of 16th, or the early morning of December 17th. They had had nothing to eat or drink from the time they left their vessel until taken aboard of the Cranmer, about 30 hours. They were properly taken care of, and were asked to assist at the pumps, and to throw over cargo. Some of them did so; one assisted the cook. About 3 o'clock P. M. a brig hove in sight. The colors were taken down, no assistance being then needed; the Cranmer being almost dry, not leaking any, and entirely straightened up. The brig came near them, and libelants wanted to go to her, but at the request of the master of the Cranmer they remained aboard. An hour later the Cranmer got under way, and sailed to the Delaware breakwater, or near there, when she was taken in tow. The libelants came aboard about 25 miles E. S. E. from Cape Charles, and when picked up were heading direct to sea. Upon the arrival of the vessel at Philadelphia, the master paid libelants each five dollars, and the owners offered them ten dollars each additional, which they refused.

*Flanders & Pugh*, for libelants.

*Henry R. Edmunds*, for respondent.

BUTLER, J. I find the material facts to be substantially as set forth in respondent's statement, filed in the case. There is serious disagreement between the witnesses on the one side and the other. The burden of proof, however, is on the libelants; and their evidence consists entirely of their own statements. Without making allowance for their interest, and consequent bias, the weight of evidence seems to be clearly against them. Making such allowance, the preponderance is seriously increased. The witnesses on the other side are disinterested. They are in no respect responsible for the situation of the vessel, and no motive for falsifying can be seen. I do not feel any hesitation, therefore, in concluding that the material facts are substantially as detailed by these witnesses, and set forth in the respondent's statement. Nor do I feel any serious hesitation in concluding from these facts that the libelants did not render a salvage service. Whatever may have been the vessel's situation, as respects peril, before the libelants were picked up, she was not, in my judgment, in serious danger at that time, or afterwards. She had been so far pumped out that the water was reduced to about three feet; the

THE C. G. CRANMER.


deck-load (which had become unbalanced by losing a part in the storm, and thus caused the list, and shipping of water) had been so far thrown over that the vessel had righted. That, however, is not the period of time at which her situation is material to the question involved. Even if she had then been in peril, I would hold that the libelants—picked up from the sea, (for they were unable to get on board without help,) rescued from great danger, if not almost certain death, (for they were hungry and without provisions, wet, stiff with cold, and running out to sea in the storm)—are not entitled to compensation as salvors for any work they performed. Thus rescued and taken care of, it was their duty to do all they did, prior to the time when the brig came by,—about 3 o'clock in the afternoon. Then they had an opportunity of leaving, and it was their right to embrace it. They proposed to leave, but remained, at the master's request, to assist in working the vessel. This is the material period to which inquiry must be directed respecting the vessel's situation. She was then substantially free of water; her deck-load was so far removed as not to present serious difficulty, and she was virtually out of danger. Her anchors were gone, but this was all, or nearly all, the loss her tackle had suffered. The hull had suffered none. She was in condition to sail for port, and did sail in about an hour. The loss of her anchors was not, therefore, serious. The fact that she declined the services of the brig, declaring that she did not need assistance, must be regarded as conclusive that she was not in peril, and did not apprehend difficulty in getting to port. Early in the morning (before libelants came aboard) she raised a signal on seeing the smoke of a passing vessel, —mistakenly supposed to be a steamer, which might tow her to port. The signal was left up in the hope of attracting a tug. Whether it is called a signal of distress or signal for a tug is unimportant. It is clear that when the master was informed of the brig's approach he took it down, saying he needed no assistance; and that when the brig hailed, her proffered aid was declined. These circumstances seem to be conclusive on the subject of peril at this time. It is impossible to believe that if the vessel had been in peril, great or slight, the master would have so acted, and thus without motive or excuse have risked the lives of himself and crew, as well as the vessel and cargo. He desired the libelants' assistance in working the vesssel. This, however, was because his crew had been overtasked during the storm, and were tired; and because the situation made the presence of such additional help a wise measure of precaution. The libelants are not, therefore, entitled to salvage compensation. They are, however, entitled to be paid for the services rendered after the brig passed. They remained on board by request, with an understanding that they should be so paid. In determining how much they should receive, the circumstances existing at the time—the condition of the weather, the possibility of trouble and delay in reaching port —should be considered. The services (under the contracts) extended over a period of about three days. Twenty-five dollars each, in my judgment, is a fair allowance. Five dollars have been paid to each; for the balance, with costs, they must have a decree.